UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAQUNN BLOUNT,

       Petitioner,

                                                         Case No. 16-cv-13669

v.

                                                         HON. MARK A. GOLDSMITH

MARK MCCULLICK,

       Respondent.

_____/

## OPINION & ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner NaQunn Blount filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1), challenging his Macomb County Circuit Court no contest plea convictions for two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b (use of a weapon); one count of armed robbery, Mich. Comp. Laws § 750.529; and one count of identity theft, Mich. Comp. Laws § 445.65. Petitioner was sentenced to concurrent 20 to 40 years' imprisonment for the sexual misconduct and robbery convictions, and one to five years' imprisonment for the identity theft conviction.

The petition raises two claims: (i) Petitioner's no contest plea was not knowing or voluntary where he was not informed that his plea acted to waive antecedent claims of error, and (ii) Petitioner was denied the effective assistance of counsel where his attorney misled him as to the sentencing consequences of his no contest plea. For the reasons stated below, the Court denies the petition, declines to issue a certificate of appealability, but grants permission to proceed on appeal in forma pauperis.

1

# I. BACKGROUND

Petitioner's convictions came about after he abducted a woman who was walking along a sidewalk at night. Petitioner forced the victim into an alley, raped her twice at knife-point, and then stole some of her belongings.

At a pretrial hearing held a few days before trial was scheduled to start, the prosecutor indicated that it was not making any plea offers to Petitioner. The prosecutor informed the court that Petitioner was on probation for armed robbery at the time of the offense, the sentencing guidelines called for a minimum sentence between 14 and 24 years, and the prosecution would be seeking consecutive sentencing if it obtained a conviction. 6/10/2014 Hr'g Tr. at 6-7 (Dkt. 9-10).

Three days later, Petitioner entered his no contest plea. 6/13/2014 Plea Tr. (Dkt. 9-11). The Court indicated that it understood Petitioner was going to plead no contest to the four charged offenses. Id. at 3. In exchange for the plea, the prosecutor indicated that it would not seek consecutive sentences. Id. at 4.

Petitioner was place under oath and affirmed that he was pleading no contest to two counts of first-degree criminal sexual conduct, one count of armed robbery, and one count of identity theft. Id. at 6-7. Petitioner indicated that he was 18 years old and graduated from high school. Id. at 7. He denied that he was under the influence of drugs or alcohol. Id. He affirmed that he could read and write. Id. Petitioner acknowledged his understanding of his right to the assistance of counsel, he affirmed that he had discussed the case with his attorney, and he indicated that he was satisfied with the advice he received. Id. at 7-8. Petitioner understood that, by pleading no contest, he was waiving his right to a trial and to all of his trial rights. Id. at 8. Petitioner indicated that he read the advice of rights form, he understood those

rights, and he signed the form.  Id.

Petitioner stated that he was pleading no contest to the charges as the result of his own choice to do so.  Id. at 8.  Petitioner understood that the maximum sentence he could receive as the result of his plea was life imprisonment.  Id. at 9.  Petitioner understood he would also be required to submit to lifetime electronic monitoring.  Id.

Petitioner denied that he had been promised anything by the court, the prosecutor, or his attorney with respect to any particular sentence in exchange for his plea.  Id. at 10.  He indicated that he had only been informed by his counsel what the sentencing guidelines were.  Id.  The prosecutor then explained that the guidelines might be calculated as high as 270-to-450 months for Petitioner's minimum sentence.  Id. at 10-11.  Petitioner agreed that he was informed of this range.  Id.

Petitioner denied that anyone had tried to force him to enter his plea, or that anyone mistreated him or pressured him.  Id. at 11.  He denied that anyone had promised him that the court would go easy on him if he entered his plea.  Id.  Petitioner indicated that he was pleading no contest freely and voluntarily because it was his own choice.  Id.  Petitioner acknowledged his understanding that if his plea was accepted, then any appeal would be by application for leave to appeal and not as a matter of right.  Id. at 11-12.  Petitioner understood that a no contest plea would be treated as a guilty plea for sentencing purposes.  Id. at 12.

The prosecutor used a police and lab report to establish the factual basis for the plea:

> It indicates that on September 25, 2013, at approximately 2210 hours, defendant walked northbound on Van Dyke from 8 Mile following behind Shannon Cole, the victim, on the west side of the sidewalk on Van Dyke.  Defendant forcefully grabbed victim's hair on the back of her head while holding what victim believed was a knife to her throat.  Defendant poked the knife into the side of the victim, walked the victim into the alley, slammed and hit the victim's head causing victim to black out.  Victim woke up with

> her pants and underwear at her knees. Defendant walked victim farther down an alley, knocking her to the ground, forced the victim to perform fellatio on him and the defendant placed his penis inside victim's vagina forcing sexual intercourse. The victim was treated at St. John Macomb Hospital and a SANE exam was completed. Defendant confessed to the crime and wrote a statement.
>
> I have a lab number here, SH 133043, from the Northville lab, indicating that this semen that was recovered from the vaginal wall, the swab from the SANE exam of Shannon Cole that they matched the sperm and the DNA type of Naqunn Karriem Blount.
>
> As far as the identity theft and the armed robbery, your Honor, I will be citing from the police report, 1358171. It's the same amount, it's the same night, same day. After this happened, the sexual assault, Shannon, the victim, stated the suspect took her government-issued cell phone, credit card, and a bottle of her medication. While she was being interviewed at the hospital, she checked her credit card account from her phone just shortly after the sexual assault, and she confirmed that two transactions had been completed with the credit card stolen by the suspect. And we also have a receipt from Speedway in Sterling Heights for forty-eight fifty-six where he used her credit card to buy gasoline.

Id. at 12-14.

Petitioner indicated that he understood he was giving up any claim that the plea was the result of any promises or threats that he did not disclose. Id. at 14. He was also giving up any claim that it was not his choice to enter the plea. Id. Both attorneys denied knowledge of any promises, threats, or inducements for the plea other than what was placed on the record. Id.

Petitioner indicated that he was on probation at the time of the offense, and that the new conviction might have an adverse effect on his probationary status. Id. at 15. After all of this, the court found that Petitioner's plea was knowing, freely, and voluntarily made. Id.

At the sentencing hearing, Petitioner initially indicated that he did not want to go forward with his plea, which the court had accepted but held under advisement. 7/24/2014 Sentencing Tr. at 3 (Dkt. 9-12). The trial court was open to granting the request, stating that Petitioner

4

would be given an opportunity to meet with his counsel and, "if you feel you don't have the information and you don't want to go forward and you want to withdraw your plea, I'm going to set it for trial and then we'll all learn whatever it is that you don't think you know. But, I'm done dinging around with this, frankly. We're going to try the case or we're going to resolve it. I have no preference which one you do." Id. at 4. After about a half-hour recess, defense counsel informed the court that Petitioner decided to proceed with the plea. Id. at 5-6. During allocution, Petitioner said, "I want to apologize to the court for my actions and take responsibility for them." Id. at 10. The trial court then sentenced Petitioner to the prison terms indicated above.

Petitioner was appointed appellate counsel who filed a motion to withdraw the plea. A hearing was held on the motion. 3/30/2015 Hr'g Tr. (Dkt. 9-13). Appellate counsel indicated that Petitioner pled under the erroneous belief that he would be able to appeal issues relating to his arrest, seizure of evidence, effectiveness of counsel, sufficiency of evidence, and the use of his prior conviction. Id. at 4. If Petitioner had known that he could not appeal those issues, he would not have entered his plea. Id. The trial court reviewed the record and found that Petitioner's plea was knowingly and voluntarily entered despite his allegations. Id. at 5-6.

Following his conviction and sentence, Petitioner's appellate counsel filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

> i. Defendant is entitled to an opportunity to withdraw his no contest plea where it was not knowing, voluntary and intelligent because he was under a misapprehension of law where he believed that he had a right to appeal issues related to the investigation, arrest, seizure of DNA, ineffective assistance of counsel, insufficient evidence, prior convictions, and other issues he believed were present in his case.
>
> ii. Defendant's sixth and Fourteenth Amendment rights were violated by judicial fact finding that increased the floor of the

permissible sentence in violation of Alleyne v. U.S., 133 S. Ct. 2151 (2013); defense counsel was ineffective in failing to object and/or in agreeing to the scoring.

Petitioner also filed a pro se supplemental brief raising the following additional claim:

iii. Defendant is entitled to an opportunity to withdraw his no contest plea where his Fifth, Sixth, and Fourteenth Amendment rights were violated due to counsel's failure to investigate evidence that if presented at a trial, would have a good chance of resulting in acquittal, and failure to file specific pretrial motions that had a reasonable probability of suppressing material prosecution evidence or dismissing the charges with prejudice.

The Michigan Court of Appeals affirmed denied the application for leave to appeal "for lack of merit in the grounds presented." People v. Blount, No. 326971 (Mich. Ct. App. June 3, 2015) (Dkt. 9-14). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court remanded the case to the trial court so that it could reconsider Petitioner's sentence in light of People v. Lockridge, 870 N.W.2d 502 (Mich. 2015). People v. Blount, 872 N.W.2d 470 (Mich. 2015). As of the date of this opinion, Petitioner is still awaiting resentencing. The issues presented in the petition, which challenge Petitioner's convictions and not his sentences, were rejected by the Michigan Supreme Court by an order indicating that it "was not persuaded that the questions presented should be reviewed." Id.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits

>in State court proceedings unless the adjudication of the claim —
>
>>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported,

the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

8

## III. ANALYSIS

### A. Validity of No Contest Plea

Petitioner first asserts that his plea was involuntarily entered in violation of due process because he was not informed during the plea colloquy that he would be unable to appeal issues related to the investigation of his case, his warrantless arrest, seizure of his DNA, ineffective assistance of counsel, use of his prior convictions for sentencing, as well as other unspecified issues. Pet. at 5.

The AEDPA deferential standard of review applies to this claim because the Michigan Court of Appeals rejected Petitioner's application for leave to appeal "for lack of merit in the grounds presented." This decision amounted to a decision on the merits. Werth v. Bell, 692 F. 3d 486, 492-494 (6th Cir. 2012).

Under clearly established U.S. Supreme Court law, in order for a guilty plea to be constitutional it must be knowing, intelligent, voluntary, and done with sufficient awareness of the relevant circumstances and likely consequences. Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005). The identical standard applies to a plea of no contest or nolo contendere. Fautenberry v. Mitchell, 515 F.3d 614, 636-637 (6th Cir. 2008). For a guilty or no contest plea to be voluntary, the defendant must be

> fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, [and not] induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

Brady v. United States, 397 U.S. 742, 755 (1970) (emphasis added). To be informed of the direct consequences of his plea, the defendant must be made aware of the maximum sentence that can be imposed for the crime for which he is pleading. King v. Dutton, 17 F.3d 151, 154

9

(6th Cir. 1994).

The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea. Brady, 397 U.S. at 749. A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. Garcia v. Johnson, 991 F.2d 324, 326-328 (6th Cir. 1993). Where the transcript shows that the guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to the state-court findings of fact and to the judgment itself. Id. at 326-327.

Petitioner's claim that his plea was unknowing or involuntary because he was not informed that his no contest plea acted to foreclose review of alleged antecedent errors fails because it cannot be supported by clearly established Supreme Court law.

Under established Supreme Court law, a criminal defendant must only be advised of the "direct consequences" of a plea, Brady, 397 U.S. at 748, and need not be advised of the indirect or collateral consequences of a plea, King, 17 F.3d at 153. Direct consequences generally include matters within the trial court's immediate control, such as the waiver of trial rights and the sentence that will be imposed. Indirect consequences, on the other hand, generally include matters outside the trial court's direct control, including how or whether claims of antecedent error will be reviewed by an appellate court. See United States v. Adigun, 703 F.3d 1014, 1020 (7th Cir. 2012) ("We have previously held that the trial court is not obligated to inform defendants of the consequences of an unconditional plea on a potential appeal."); Upton v. Hoyt, 43 F. App'x 34, 35 (9th Cir. 2002) ("Here, because the decision on Upton's constitutional challenge to her sentence was in the hands of another governmental agency, the state appellate court, the 'consequences' complained of by Upton are collateral, not direct. Consequently, the

trial court was not required to advise Upton that the Oregon Court of Appeals might decline to review the merits of her constitutional challenge to her sentence."). Petitioner cites no clearly established Supreme Court requirement that, for a guilty plea to be knowingly entered, a defendant must be informed that appellate review of claimed antecedent errors might be limited.

Moreover, an examination of all the relevant circumstances surrounding the plea, as revealed by the plea transcript, shows that Petitioner's plea was entered knowingly and voluntarily. Petitioner was advised of all the trial rights he was waiving by entering his plea, and he was informed of the maximum possible sentence, as well as a preliminary calculation of sentencing guidelines. By pleading no contest he was informed that the prosecutor was waiving its assertion that Petitioner's sentence be served consecutively to his probationary sentence. Additionally, prior to imposing sentence, the trial court allowed Petitioner an opportunity to reconsider his decision to plead no contest and gave him the option to withdraw his plea and stand trial, but after consultation with counsel Petitioner declined the invitation and indicated his desire to proceed with sentencing.

Finally, during the plea colloquy the trial court informed Petitioner that any appeal from his conviction would be by application for leave to appeal rather than by right. Petitioner indicated his understanding, and though this exchange presented an opportunity to do so, Petitioner did not ask whether this meant that his ability to raise claims of error on appeal would be impacted. Indeed, at no time in any of the pretrial hearings, the plea hearing, or the sentencing hearing, did Petitioner ever assert or hint at any of the claimed errors he lists here. The closest Petitioner came to making any objections was at the beginning of the sentencing hearing where he claimed he had not received all the discovery materials. In response, the trial court gave Petitioner the option of withdrawing his plea, but Petitioner opted to continue with

sentencing.

Based on the thorough plea colloquy conducted by the trial court, the Michigan Court of Appeals rejection of Petitioner's first claim was not contrary to, and did not involve an unreasonable application of, clearly established Supreme Court law.

### B. Ineffective Assistance of Counsel

Petitioner next claims that he was denied the effective assistance of counsel when his trial attorney advised him off the record that he would only receive a sentence of 13½ to 23½ years, and that with good time he would only serve about 8 years. Pet. at 7. Petitioner provides affidavits from two family members attesting to these representations. Id. at 15-16.

The U.S. Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging a plea on the ground that he was denied his Sixth Amendment right to effective assistance of counsel. First, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." Hill v. Lockhart, 474 U.S. 52, 57-58 (1985) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). To demonstrate that counsel's performance fell below this standard, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Second, if the petitioner satisfies the first prong of this test, the petitioner must then demonstrate that counsel's performance resulted in prejudice — "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded . . . and would have insisted on going to trial." Hill, 474 U.S. at 59. The Supreme Court has explained that "[in] many . . . plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through trial." Id. The

Court has also emphasized that "these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncracies of the particular decisionmaker.'" Id. at 59-60 (quoting Strickland, 466 U.S. at 695).

Petitioner's claim that his attorney made promises about the sentence he would receive and the time he would actually serve in prison is contradicted by his sworn testimony at the plea hearing that there were no promises made to him that were not placed on the record. As aptly stated by the Sixth Circuit when faced with a challenge to a plea bargain based upon alleged off-the-record statements:

> If we were to rely on [the petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy . . . indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before us. "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."

Ramos v. Rogers, 170 F.3d 560, 566 (6th Cir. 1999) (quoting Baker v. United States, 781 F.2d 85, 90 (6th Cir. 1986)).

Furthermore, Petitioner has failed to demonstrate that he was prejudiced by his counsel's alleged erroneous advice. He has not demonstrated a reasonable probability that the proceedings against him would have been more favorable. According to the records offered for a factual basis at the plea hearing, DNA evidence indicated that Petitioner was the source of genetic material recovered from the rape victim, Petitioner confessed to the crime, and Petitioner used the victim's credit card hours after committing the crime. In light of the overwhelming evidence of his guilt, there is not a reasonable probability that Petitioner would have opted to

stand trial and prevailed, had his attorney not given him the alleged erroneous sentencing advice.

Accordingly, Petitioner's ineffective assistance of counsel claim is belied by his sworn testimony taken during the plea hearing that contradict his allegations, and he completely failed to demonstrate that he was prejudiced by his counsel's alleged erroneous advice. The claim was therefore reasonably rejected by the state courts.

As neither of Petitioner's claims merit relief, the petition will be denied.

**C. Certificate of Appealability and Leave to Proceed In Forma Pauperis on Appeal**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

It is not reasonably debatable whether clearly established Supreme Court precedent applies to the locking of the courtroom doors during opening statements and closing arguments.

14

The Court will, therefore, deny a certificate of appealability.

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant in forma pauperis status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal. Id. at 764-765.

## IV. CONCLUSION

For the reasons stated above, the Court denies the petition (Dkt. 1), declines to issue a certificate of appealability, and grants permission to proceed in forma pauperis on appeal.

SO ORDERED.

Dated: July 17, 2017  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 17, 2017.

s/Karri Sandusky
Case Manager